UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN ALDRICH,

Plaintiff,

-v-

Case No. 4:10-cv-13515-AC

Hon. Mark Goldsmith

BOYSVILLE OF MICHIGAN, INC., a Michigan corporation, doing business as HOLY CROSS CHILDREN'S SERVICES,

Defendant.

_______________________________________/

LaFLAMME & MAULDIN, P.C.
By: Richard N. LaFlamme (P32641)
2540 Spring Arbor Road
Jackson, MI 49203
(517) 784-9122
Attorneys for Plaintiff
rlaflamme@lm-law.net

BODMAN PLC
By: Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6025
Attorneys for Defendant
kpiper@bodmanlaw.com

BELLANCA, BEATTIE & DELISLE, P.C.
By: James V. Bellanca, Jr. (P10663)
James C. Zeman (P22711)
20840 Vernier Road
Harper Woods, MI 48225
(313) 882-1100
jbellanca@bellanca.com
jzeman@bellanca.com

_______________________________________/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Defendant Holy Cross Children's Services by its attorneys Bodman PLC moves for summary judgment under Fed. R. Civ. P. 56. In support of its motion, Defendant relies on the accompanying brief.

In accordance with E.D. Mich. L.R. 7.1(a) Defendant sought the concurrence of counsel for Plaintiff in an email dated July 19, 2011 in which counsel for Defendant outlined the nature of its motion and the legal basis. Counsel for Plaintiff declined concurrence in the relief sought.

Respectfully submitted,

BODMAN PLC

By: /s/ Karen L. Piper
Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6025
Attorneys for Defendant
kpiper@bodmanlaw.com

August 3, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN ALDRICH,

Plaintiff,

-v-

BOYSVILLE OF MICHIGAN, INC., a Michigan corporation, doing business as HOLY CROSS CHILDREN'S SERVICES,

Defendant.

Case No. 4:10-cv-13515-AC

Hon. Mark Goldsmith

_______________________________________/

LaFLAMME & MAULDIN, P.C.
By: Richard N. LaFlamme (P32641)
2540 Spring Arbor Road
Jackson, MI 49203
(517) 784-9122
Attorneys for Plaintiff
rlaflamme@lm-law.net

BODMAN PLC
By: Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6025
Attorneys for Defendant
kpiper@bodmanlaw.com

BELLANCA, BEATTIE & DELISLE, P.C.
By: James V. Bellanca, Jr. (P10663)
James C. Zeman (P22711)
20840 Vernier Road
Harper Woods, MI 48225
(313) 882-1100
jbellanca@bellanca.com
jzeman@bellanca.com

_______________________________________/

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

STATEMENT OF ISSUES PRESENTED ..... ii

CONTROLLING AUTHORITY ..... iv

INDEX OF AUTHORITIES ..... v

STATEMENT OF MATERIAL FACTS ..... vii

THE PARTIES ..... vii

THE LAYOFF DECISION ..... viii

CONSIDERATION OF PLAINTIFF FOR ANOTHER POSITION ..... x

PLAINTIFF'S INITIAL HIRING AND EMPLOYMENT ..... xvi

PLAINTIFF'S CLAIMS OF DISCRIMINATION AND RETALIATION ..... xviii

HCCS EMPLOYEES DENY DISCRIMINATORY ANIMUS BASED ON DISABILITY, WEIGHT OR FMLA LEAVE ..... xxii

ARGUMENT ..... 1

A. THE SUMMARY JUDGMENT STANDARD ..... 1

B. PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY THE LIMITATIONS PERIOD. ..... 2

C. PLAINTIFF CANNOT SHOW DISCRIMINATION BASED ON DISABILITY OR WEIGHT ..... 4

D. PLAINTIFF CANNOT SHOW HER LAYOFF WAS DUE TO RETALIATION FOR REPORTING DISCRIMINATION ..... 7

E. PLAINTIFF CANNOT SHOW THAT SHE WAS DENIED ANOTHER POSITION FOLLOWING HER LAYOFF DUE TO DISCRIMINATION OR RETALIATION ..... 8

F. PLAINTIFF CANNOT SHOW ANY DECISION WAS MOTIVATED BY HER FMLA LEAVE ..... 10

CONCLUSION ..... 11

## STATEMENT OF ISSUES PRESENTED

Plaintiff Robin Aldrich was laid off from her job at defendant Holy Cross Children's Services when her position of Senior Trainer was eliminated as part of a substantial reduction-in-force affecting 48 employees in Fall 2008. Plaintiff applied for but was not offered another position as a Family Worker. Plaintiff claims her employment was terminated and she was not offered another job due to:

(1) A disability, in violation of the Americans With Disabilities Act (ADA) and Michigan's Persons With Disabilities Civil Rights Act (PDCRA) and in retaliation for complaining of disability discrimination in violation of the ADA and PDCRA;

(2) Her weight, in violation of Michigan's Elliott-Larsen Civil Right Act (ELCRA) and in retaliation for complaining of weight discrimination in violation of ELCRA; and

(3) In retaliation for taking a Family and Medical Leave Act (FMLA) leave.

The issues presented are:

1. Whether Plaintiff's state law claims under ELCRA and PDCRA are time-barred where Plaintiff failed to commence this action within the six-month limitations period to which she agreed in her 1996 employment application and 2005 signed employee handbook receipt.

2. Whether Plaintiff can show discrimination or retaliation under the ADA, PDCRA and ELCRA where Plaintiff has no evidence that she was singled out for discharge based on disability or weight or FMLA leave and never complained of or reported, discrimination based on disability or weight to her employer before she was notified that her position was being considered for elimination.

3. Whether Plaintiff can show discrimination or retaliation in the decision to place another, better-qualified, displaced employee into an open Family Worker position that Plaintiff

was not qualified for at the time the decision was made to place the other employee into that position.

4. Whether Plaintiff can show that the decisions to eliminate her Senior Trainer position or to place a better-qualified candidate into an open Family Worker position constitutes discrimination or retaliation under the FMLA.

## CONTROLLING AUTHORITY

The following cases are the controlling cases on each of Plaintiff's claims.

1. *Timko v Oakwood Custom Coating, Inc.*, 244 Mich. App 234 (2001), holds that shortened limitations periods in employment applications are enforceable under Michigan law.

2. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F3d 544, 547 (6th Cir. 2004), holds that the fourth prong of the *McDonnell Douglas prima facie* case in a reduction-in-force requires a showing of "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the Plaintiff for discharge for impermissible reasons."

3. *Matras v. Amoco Oil Co.*, 424 Mich. 675, 684 (1986), holds under Michigan law "when an employer lays off employees for economic reasons, the courts have required the employer to present sufficient evidence on the ultimate question – whether [the protected states] was a determining factor in the decision to discharge the . . . protected employee."

4. *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004), requires a showing of protected activity and a causal connection between that protected activity and an adverse employment action.

5. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696 (6th Cir. 2008) holds the *McDonnell Douglas* approach applies to FMLA claims.

# INDEX OF AUTHORITY

**CASES**


*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). 1

*Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008) ................................................ 2

*Barnett v Dept of Veterans Affairs*, 153 F.3d 338, 342-343 (6th Cir. 1998) .................................. 8

*Blume v. Potter*, 289 F.3d.Appx. 99, 106 (6th Cir. 2008)........................................................... 12

*Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) ......................................................... 12

*Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 410 Mich. 118, 139; 301 N.W.2d 275 (1981) ........................................................................................................ 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................. 2

*Chmielewski v. Xermac, Inc.*, 457 Mich 593, 602 (1998)............................................................ 6

*Clark v. DaimlerChrysler Corporation*, 268 Mich. App. 138 (2005), leave to appeal denied 475 Mich 875 (2006) ........................................................................................................ 4

*Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) .................................... iv, 12

*DiCarlo v Potter*, 358 F.3d 408, 420 (6th Cir. 2004) ..................................................................... 9

*EEOC v. DaimlerChrysler Corp.*, 111 Fed Appx. 394, 398 (6th Cir. 2004) .................................. 6

*Ercegovich v Good Year Tire and Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1988)....................... 7

*Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008) ......................... 2

*Hazle v Ford Motor Co.*, 464 Mich 456 (2002)............................................................................. 5

*Hein v All America Plywood Co., Inc.*, 232 F.3d 482, 489 (6th Cir. 2000).................................... 6

*Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007) ..................................................................... 3

*Hunter v. Valley View Local Schools*, 579 F.3d 688, 690-691 (6th Cir. 2009) ............................ 11

*Jacklyn v Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921 (6th Cir. 1999) ........ 9

*Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006) ...................................................... 3

*Lockett v. Suardini*, 526 F.3d 866, 872 (6th Cir. 2008) ................................................................ 2




Troy_623601_1

*Manzer v. Diamond Shamrock Chems. Inc*., 29 F.3d 1078, 1084 (6th Cir. 1994)........................ 12

*Matras v. Amoco Co.,* 424 Mich 675, 684 (1986) ................................................................. iv, 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) .............................................................................................................. 2

*McDonnell Douglas Corp. v Green,* 411 U.S. 792; 93 S.Ct. 1817 (1973) ........................ iv, 6, 10

*Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339 (6th Cir. 1993) .................................. 2

*Myers v. Western-Southern Life Insurance Company*, 849 F.2d 259 (6th Cir. 1988) ................... 5

*Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608; 67 S.Ct. 1355 (1947) ........................................................................................................................................... 3

*Rory v. Continental Ins. Co.*, 473 Mich. 457, 470 (2005) .......................................................... 3

*Rowan v Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544 (6th Cir. 2004)................ iv, 5, 6, 7

*Steiner v. Henderson*, 1221 Fed.Appx. 552 (6th Cir. 2005) ....................................................... 12

*Tatis v. U.S. Bancorp*, 473 F.3d 672, 675 (6th Cir. 2007) ........................................................... 1

*Texas Dept of Community Affairs v Burdine*, 450 U.S. 248; 101 S.Ct. 1089 (1981) .................... 6

*Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352 (6th Cir. 2004)................................................. 5

*Timko v. Oakwood Custom Coating, Inc*., 244 Mich. App. 234 (2001) ....................................... 4

*Walters v. Pride Ambulance Co*., 683 F.Supp.2d 580, 593 (W.D. Mich. 2010).......................... 11

*Wright v. DaimlerChrysler Corp.*, 220 F.Supp.2d 832 (E.D. Mich. 2002) .................................. 5

**RULES**

Fed. R. Civ. P 56.......................................................................................................................... 1

Fed. R. Civ. P. 56(e) ..................................................................................................................... 2

29 C.F.R. § 825.220(c)................................................................................................................... 8

## STATEMENT OF MATERIAL FACTS

### THE PARTIES

1. Plaintiff Robin Aldrich, a/k/a Emma R. Aldrich, ("Plaintiff") was employed by Defendant Holy Cross Children's Services ("HCCS") from January 13, 1997 to November 4, 2008. She was working in HCCS' Information System (I.S.) Department at the time her employment was terminated. Plaintiff's complaint, ¶ 7. *See also* Exhibit 1, Plaintiff's dep., p. 5.

2. Plaintiff Holy Cross Children's Services is an assumed name of Boysville of Michigan, Inc. Plaintiff's Complaint, ¶ 5.

3. At all relevant times, Plaintiff's immediate supervisor was Eileen Parker. Ms. Parker's supervisor was I.S. Department Director, Kathy Pixley. Ms. Pixley at that time reported to Chief Financial Officer, John Lemmer. Alyson Beck was the Director of Human Resources. William (Bill) Bill Geddes was the Regional Director. Exhibit 1, Plaintiff's dep., pp. 28, 65, 82, 196 and 208. Rick Kruse was the Division (or Program) Manager under Mr. Geddes. Exhibit 2, Kruse dep., pp. 6-7. Loren Brown was the Executive Director. Exhibit 3, Brown dep., p. 12.

4. HCCS is a "Catholic-oriented, nonprofit child care and family preservation organization [which] conducts residential and community-based programs throughout the state of Michigan." Exhibit 4, HCCS' Mission Statement.

5. HCCS operates multiple programs for children: group homes, secure treatment, day treatment, supervised independent living, foster care, in-home detention and detention. Exhibit 5, Geddes dep., p. 9.

6. All of the children that HCCS services are "adjudicated through the court system." Exhibit 6, Lemmer dep., p. 20.

**THE LAYOFF DECISION**

7. HCCS experienced a decline in revenue by mid-2008. Exhibit 6, Lemmer dep., p. 19. HCCS also saw a decline in charitable donations, due to the economy. Exhibit 6, Lemmer dep., p. 22.

8. Due to the "economic downturn" HCCS had to "downsize [the] organization." It was a "difficult task," not something they did lightly." Exhibit 3, Brown dep., pp. 27-28.

9. The decline in enrollment was not due to issues with HCCS. Other similar agencies also experienced a decline in enrollment due to lack of funding, a shift to treating children in their homes rather than in placement outside the home and a lawsuit against the State of Michigan that changed how children could be placed and oversight over the children's placements. Exhibit 5, Geddes dep., pp. 12-13.

10. The decline in revenue was due to the State sending fewer kids to *all* agencies that provide services to children comparable to the services that HCCS provides, in part, because the State was trying less expensive, non-residential programs. Exhibit 6, Lemmer dep., pp. 19-21.

11. HCCS developed "frequent budget plans" in fall 2008. Exhibit 3, Brown dep., p. 20.

12. Mr. Lemmer also recalled that there were many budget plans during the fall of 2008, one or more of which identified the cost savings from eliminating Plaintiff's position. Exhibit 6, Lemmer dep., p. 40.

13. Plaintiff was only one employee among others identified for layoff in these budget plans. Exhibit 3, Brown dep., pp. 21-22.

14. These budget plans included names other than Plaintiff's. Exhibit 6, Lemmer dep., p. 43. See also Exhibit 7, Affidavit of Alyson Beck and Attachment C.

15. Plaintiff's position was not the only one eliminated. Exhibit 3, Brown dep., pp. 28. Approximately forty-eight (48) HCCS employees were laid off between October 2008 and December 2008. Exhibit 8.

16. Executive Director Loren Brown had directed CFO Mr. Lemmer to reduce costs by a specific dollar amount in the Cracchiolo Center (*ie*, administration building). Exhibit 6, Lemmer dep., pp. 37-38.

17. Mr. Brown discussed with Mr. Lemmer and Ms. Pixley options for eliminating other positions in administrative services. The discussions focused on "where coverage needed to be in the operations." Exhibit 3, Brown dep., pp. 24-25.

18. To assist in determining where HCCS could cut costs, Mr. Lemmer asked <u>all</u> employees under his direct or indirect supervision in I.S., I.T. and Accounting to provide a list of their daily activities. Mr. Lemmer received the requested information from <u>all</u> employees. Exhibit 6, Lemmer dep., pp. 18, 23-25.

19. Mr. Lemmer, Ms. Pixley and Ms. Parker discussed every employee in the I.S. department "to determine whether it would be a position that [HCCS] could continue to survive without." Exhibit 6, Lemmer dep., pp. 37-38.

20. Ms. Pixley explained that newer hires were more computer literate so there was a "lesser need for training." Exhibit 9, Pixley dep., pp. 19-20. They also determined that they could do training electronically using PowerPoints and self training. Exhibit 6, Lemmer dep., p. 40.

21. Plaintiff's position was selected. Exhibit 6, Lemmer dep., p. 37.

22. Since 2009, HCCS closed its Monroe facility, plus several group homes, plus some of the none-secure residential treatment units at its Clinton campus. Exhibit 5, Geddes dep., pp. 8, 11-12.

23. In 2010, HCCS implemented a 5% across-the-board pay cut and reduced employee benefits. For example, HCCS no longer offers a pension. Exhibit 10, Beck dep., pp. 19-20.

24. In total, HCCS laid off over 200 employees. Exhibit 3, Brown dep., p. 28.

25. Plaintiff was formally notified of her layoff in a telephone call on October 21, 2008 because Plaintiff was absent that day. Exhibit 10, Beck dep., p. 26. Plaintiff also was given written notice of layoff dated October 21, 2008 to be effective November 4, 2008. Exhibit 1, Plaintiff's dep., p. 22 and Exhibit 11, Notice of layoff.

26. Plaintiff's duties were absorbed in part by Ms. Pixley and Ms. Parker. HCCS automated some of Plaintiff's duties. HCCS also developed on-line training programs. Exhibit 21, Defendant's Response to Plaintiff's Discovery Requests.

**CONSIDERATION OF PLAINTIFF FOR ANOTHER POSITION**

27. Plaintiff had been "forewarned" in a meeting with her supervisor Eileen Parker and department manager Kathy Pixley on September 29, 2008 that her job might be eliminated. Exhibit 9, Pixley dep., pp. 18-19.

28. Ms. Pixley explained during the meeting that she had looked at other options: if she laid off Steve Myer, they wouldn't have a Hardware Tech. If they laid off Mike Grulke, she would have to do his work as Hardware Manager/I.T. manager. Exhibit 9, Pixley dep., p. 29. *See also* Exhibit 17, Plaintiff's Journal Notes.

29. The I.S. Trainer position had been considered for layoff in 2007, before Mr. Lemmer was hired, but was not eliminated at that time. Exhibit 9, Pixley dep., pp. 20-21, 35-36.

30. It is HCCS' procedure that employees whose positions are eliminated can apply for open positions. Exhibit 10, Beck dep., pp. 39-40. See also Exhibit 11, Layoff Notice.

31. New positions are not guaranteed. Exhibit 10, Beck dep., pp. 40-42.

32. At her deposition, Ms. Beck was able to identify from memory twelve (12) other employees laid off in fall 2008 who did not obtain another job at HCCS at the time of their layoff. Exhibit 10, Beck dep., pp. 40-42.

33. Sometimes managers do not follow the procedure and place employees in open positions. Exhibit 10, Beck dep., pp. 39-40.

34. At the time Plaintiff learned of her possible layoff, Plaintiff was working on obtaining two masters degrees in social work at Eastern Michigan University. She was doing required field placement work at HCCS. Plaintiff obtained her masters degrees in April 2009. Exhibit 1, Plaintiff's dep., pp. 15, 20-21.

35. Even before she was formally notified of layoff, Plaintiff initiated conversations with Division Manager Rick Kruse about seeking a social worker position at HCCS. Mr. Kruse was interested in having her. Exhibit 2, Kruse dep., pp. 11-12, Exhibit 1, Plaintiff's dep., pp. 46-47.

36. Plaintiff did not submit a resume to Human Resources for the Family Worker position. She spoke with Mr. Kruse about the position. Exhibit 1, Plaintiff's dep., p. 23.

37. There had been a Family Worker position open for some time. Exhibit 5, Geddes dep., p. 16.

38. Mr. Kruse never told Plaintiff that the Family Worker position would be hers without going through the application process and Mr. Kruse never planned to place her in the job without completing the application process. Exhibit 2, Kruse dep., pp. 34-35.

39. The State of Michigan's requirements for a Family Worker position were a bachelor's degree in one of several designated subject areas: criminal justice, sociology, psychology, social work, or guidance and counseling. Exhibit 12, Kruse letter to State.

40. Plaintiff had a bachelor's degree in Information Technology from Poly (*sic* Capella) University. Exhibit 1, Plaintiff's dep., p. 15.

41. Mr. Kruse wrote to the State of Michigan to seek an exemption because Plaintiff did not have the required degree. Exhibit 2, Kruse dep., p. 12. *See also* Exhibit 12.

42. HCCS had its own requirements for the Family Worker position. Exhibit 5, Geddes dep., p. 27. HCCS's job requirements for the Family Worker position were a master's degree in social work, psychology or professional counseling, plus appropriate certification that require professional experience obtained after conferral of a degree. Exhibit 10, Beck dep., pp. 17-18.

43. Mr. Kruse notified Plaintiff by email that he would need to seek an exemption from HCCS requirements, too. Exhibit 22, Email correspondence between Plaintiff and Mr. Kruse, September 2008.

44. Mr. Kruse had a discussion with Ms. Beck about seeking a variance from the state licensing requirements for Plaintiff. Mr. Kruse never asked Ms. Beck about obtaining an exception from HCCS' job requirements. Exhibit 10, Beck dep., pp. 15-16.

45. Ms. Beck does not automatically grant exceptions to HCCS' requirements based on the State's waiver. Her decision also would take into consideration whether HCCS had other internal applicants who met the job requirements. Ms. Beck never gave Mr. Kruse an answer on whether HCCS would waive its job requirements for Plaintiff. Exhibit 10, Beck dep., pp. 16-17.

46. Before the State exemption was granted Plaintiff had accepted a position as a Treatment Specialist. Exhibit 1, Plaintiff's dep., pp. 337-338.

47. On November 16, 2008, Mr. Kruse offered Plaintiff hours working as a temporary on-call Treatment Specialist fulfilling some of the case manager responsibilities of a Family Worker. Exhibit 2, Kruse dep., p. 18 and Exhibit 13.

48. Plaintiff could not have been offered hours as a Family Worker at that time because Mr. Kruse had not received the State exemption yet. Exhibit 2, Kruse dep., p. 19.

49. Plaintiff declined the hours because she had to attend training at HCCS on Monday and Tuesday, November 17 and 18, 2008 and had had other plans the rest of that week. Plaintiff offered to work a split shift on Monday, November 24, 2008, but was taking off the rest of that week for Thanksgiving. Exhibit 13.

50. Mr. Kruse responded that they should review the situation on December 1, 2008. Exhibit 13.

51. Also, in that email correspondence, on November 19, 2008 at 6:01 a.m., Mr. Kruse wrote that Mr. Geddes had asked to see Plaintiff. Exhibit 13. See also Exhibit 2, Kruse dep., p. 14.

52. Mr. Geddes knew when Mr. Kruse told Plaintiff that Mr. Geddes wanted to speak with Plaintiff that he was going to place Ms. Lombrana in the open Family Worker position. Exhibit 5, Geddes dep., p. 29.

53. On November 17 and 18, 2008, Plaintiff attended training at HCCS for a Treatment Specialist and/or Family Worker position. Exhibit 1, Plaintiff's dep., p. 83.

54. On November 19, 2008, just prior to the afternoon training session, another HCCS employee, Venus Lombrana, whispered to Plaintiff that Mr. Geddes needed to see her before she left. Exhibit 1, Plaintiff's dep., pp. 87-88; and Exhibit 14.

55. Mr. Geddes was not available before Plaintiff left HCCS for the day. Exhibit 14. Plaintiff left him a voice mail message. Exhibit 14.

56. Mr. Geddes wanted to see Plaintiff to tell her that they no longer had a Family Worker position open. Exhibit 5, Geddes dep., pp. 24-26.

57. HCCS had three Program Managers, a/k/a Division Managers later known as Quality Managers. Mr. Geddes made the decision to reduce the number of Division Managers from three to two because HCCS had fewer children in care and the other Division Managers (including Mr. Kruse) had a lot of experience and skills. Exhibit 5, Geddes dep., pp. 32-36.

58. As a result of Mr. Geddes' decision to reduce the number of Division Managers, Venus Lombrana's position as a Division Manager was eliminated. Exhibit 5, Geddes dep., pp. 32-33.

59. Mr. Geddes decided to place Ms. Lombrana into the Family Worker position. Exhibit 5, Geddes dep., pp. 25-26.

60. Mr. Geddes placed Ms. Lombrana in the open Family Worker position based on Ms. Lombrana's experience working with HCCS children and their families. Ms. Lombrana had been a Manager and Therapist, Family Worker. Exhibit 5, Geddes dep., pp. 24-26.

61. Ms. Lombrana had worked at HCCS as a Treatment Specialist, a Program Coordinator, a Division Manager, a Family Worker, Division Manager and Quality Manager. Exhibit 10, Beck dep., pp. 37-38.

62. The jobs of Division Manager and Quality Manager are the same, just different titles. Exhibit 2, Kruse dep., p. 34.

63. Ms. Lombrana met the state requirements for the Family Worker position because she had a bachelor's degree in Criminal Justice. Ms. Lombrana received a bachelor's degree in Criminal Justice in 2004 and her master's degree in Psychology in February 2009. Exhibit 7, Affidavit of Ms. Beck.

64. At the time that Ms. Lombrana was assigned to the Family Worker position, HCCS would not have needed a Treatment Specialist, Temporary On-Call to perform a portion of the Family Worker duties that Mr. Kruse had been considering Plaintiff for. But HCCS

"constantly" needed Treatment Specialists/Temporary On-Call. Exhibit 5, Geddes dep., pp. 29-31.

65. According to Plaintiff's Journal Notes and testimony, Mr. Geddes told Plaintiff on Thursday, November 20, 2008 that he couldn't use her. She asked him if she could work as a Treatment Specialist. Mr. Geddes agreed. Exhibit 1, Plaintiff's dep., pp. 87-88; Exhibit 14, Plaintiff's Journal Notes.

66. Plaintiff had already declined hours for the following (Thanksgiving) week. Exhibit 13.

67. Mr. Kruse received written notice dated November 19, 2008 that the State had approved the variance for Plaintiff to work as a Family Worker. Exhibit 2, Kruse dep., p. 13 and Exhibit 13.

68. Plaintiff and Mr. Kruse "exchanged phone calls" for a few weeks but Plaintiff never picked up any hours. Exhibit 12, Letter from Mr. Kruse Requesting Variance.

69. Plaintiff was listed in Payroll and Human Resources as a Treatment Specialist Temporary On-Call as of February 5, 2009. Exhibit 10, Beck dep., pp. 34-35. See also Exhibit 23, On Call Lists showing Plaintiff's name.

70. Plaintiff used APL (All Purpose Leave) to extend her termination date to some time in December 2008. Exhibit 1, Plaintiff's dep., pp. 82-83.

71. Plaintiff commenced her employment with the Alzheimer's Association on December 3, 2008. Exhibit 1, Plaintiff's dep., pp. 18-19.

72. Plaintiff was notified that she had been removed from HCCS' payroll in March 2009. Exhibit 14 Plaintiff's Journal Notes.

73. Shortly thereafter, in April 2009, Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights. Exhibit 1, Plaintiff's dep., p. 203. See also Exhibit 19, Plaintiff's Charge of Discrimination signed on April 22, 2009.

74. The Family Worker positions were eliminated altogether approximately one year later either at or after the time that Ms. Lombrana left the Family Worker position for a Quality Manager position in Detroit. The reason was the State required that children in residential care stay a much shorter period of time. As a result, HCCS eliminated the Family Worker position and added additional program coordinators to supervise the children on campus. Exhibit 5, Geddes dep., pp. 33-35.

**PLAINTIFF'S INITIAL HIRING AND EMPLOYMENT**

75. Plaintiff applied for employment at HCCS in December 1996. At that time, Plaintiff was an Owner/Operator of her own business: M&R Services. She also was working as a Branch Office Administrator for Edward Jones, a securities-investment firm and was attending Jackson Community College. Exhibit 1, Plaintiff's dep., p. 119 and Exhibit 15, Plaintiff's 1996 employment application.

76. The employment application expressly included an agreement to a shortened limitations period:

> "I agree that any claim or lawsuit relating to my service with Boysville of Michigan must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary."

77. Plaintiff had the opportunity to read the written application that she submitted to HCCS. Exhibit 1, Plaintiff's dep., pp. 119-121

78. In 2005, Plaintiff received a new employee handbook and signed a receipt for it. Plaintiff recalled being told at the time she got the handbook that if she had any questions, she

could ask a manager. Exhibit 1, Plaintiff's dep., pp. 77-78 and Exhibit 16, Plaintiff's signed receipt of the 2005 employee handbook.

79. This receipt form includes Plaintiff's agreement,

> "that any claim or lawsuit relating to my service with HCCS Children's Services must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary." Exhibit 16.

80. The form also directs employees to read the statement on the form that includes this agreement and to:

> "ask the Human Resources Director for an explanation of any provisions which I do not understand, or about which I have any questions as this Handbook applies to all co-workers regardless of date of hire …" Exhibit 16.

81. Plaintiff's first job was in Human Resources as a word processing specialist. Her next job was in Information Systems (IS) as a trainer. Her next (and last) job was I.S. Senior Trainer. Exhibit 1, Plaintiff's dep., pp. 30-31.

82. Plaintiff is five foot seven inches and weighs 350 lbs. Exhibit 1, Plaintiff's dep., p. 136. Throughout her employment Plaintiff was overweight and had a congenital foot condition that made walking or standing for any significant time painful. Plaintiff's complaint, ¶ 9. See also Exhibit 19, Plaintiff's Charge of Discrimination with the Michigan Department of Civil Rights.

83. From May 23, 2008, until August 4, 2008, Plaintiff was on an approved FMLA leave of absence due to foot surgery. Plaintiff's complaint, ¶ 13.

84. Throughout her employment Plaintiff's performance met or exceeded the requirements of her position. Plaintiff's Complaint, ¶ 8.

**PLAINTIFF'S CLAIMS OF DISCRIMINATION AND RETALIATION**

85. In her Complaint, Plaintiff alleges discrimination by CFO Mr. Lemmer based on weight, disability (congenital foot condition?), FMLA leave and retaliation. Plaintiff's Complaint, ¶¶ 14, 15, 17 and 18.

86. Plaintiff kept notes or a journal of events that she thought were "important." They were recorded "immediately following the events" or later that evening ("Journal Notes"). Exhibit 1, Plaintiff's dep., pp. 11-12.

87. Plaintiff formed the belief in fall 2008 that she had been discriminated against. Exhibit 1, Plaintiff's dep., 132-133.

88. HCCS had a policy about reporting discrimination in its employee handbook that directed employees to discuss concerns with Human Resources. Plaintiff never discussed concerns about discrimination with Ms. Beck. Plaintiff's dep., pp. 65-66. *See also* Exhibit 4, excerpts of HCCS employee handbook.

89. Plaintiff claimed that Mr. Lemmer discriminated against her three times:

1) April 1, 2008 at a training meeting at which Mr. Lemmer said he liked Plaintiff's "big green shirt."

2) When Mr. Lemmer declined to allow Plaintiff to use paid All Purpose Leave "flex time" on Fridays while she was doing field placement work on her master's degree at HCCS.

3) September 25, 2008 meeting over her response to Ms. Pixley's inquiry over Plaintiff riding on an HCCS van with her son. Exhibit 1, Plaintiff's dep., pp. 186-188.

90. Plaintiff made extensive Journal Notes of the first and third events. Exhibit 17, Plaintiff's Journal Notes, pp. 1-4.

91. Plaintiff also claims that at the training session on April 1, 2008, during the lunch break, while Plaintiff was setting up for the afternoon session, Mr. Lemmer got very close to her

and said, “that’s quite a big green shirt you have. I love your big green shirt.” Exhibit 1, Plaintiff’s dep., pp. 190-191.

92. Plaintiff wrote a paragraph about this April 1st training session in her Journal Notes, but did not make a note of this comment. Exhibit 1, Plaintiff’s dep., p. 191.

93. The issue about flex time was that Plaintiff wanted to take off every Friday for 16 weeks beginning in May 2008 to do her field placement training which she needed to do to get her degree. Mr. Lemmer said no. Exhibit 1, Plaintiff’s dep., pp. 48-49, 187-189.

94. The September 25, 2008 meeting grew out of Ms. Pixley and Mr. Lemmer, who were meeting in the back conference room, noticing Plaintiff getting into a Holy Cross van with Plaintiff’s son, Marcus, who also worked at Holy Cross and leaving. Exhibit 9, Pixley dep., pp. 34-36.

95. Mr. Lemmer estimated that the distance between the back conference room and the front conference room where his deposition was taken was approximately 100 yards. Exhibit 17, Lemmer dep., pp. 27-28.

96. Ms. Pixley testified that she was in a meeting with Mr. Lemmer and both saw Plaintiff leaving with Plaintiff’s son in an HCCS van. Mr. Lemmer asked Ms. Pixley to find out why, so she did. Exhibit 9, Pixley dep., pp. 34-35; Exhibit 6, Lemmer dep., pp. 27-28.

97. Ms. Pixley told Mr. Lemmer that she would check. Exhibit 6, Lemmer dep., p. 28.

98. Ms. Pixley sent an email of inquiry to which Plaintiff responded, “John is welcome to ask his question directly to me.” Exhibit 9, Pixley dep., p. 34 and Exhibit 18.

99. After Mr. Lemmer saw Plaintiff’s response to his inquiry, he left a note on Plaintiff’s desk the following morning asking Plaintiff to see him. Exhibit 6, Lemmer dep., p. 29.

100. Plaintiff also wrote extensive notes about this event in her Journal Notes. Exhibit 17, Plaintiff's Journal Notes, pp. 2-4.

101. In her notes Plaintiff wrote, "I have been singled out by John [Lemmer] for a reason that is unknown to me." Exhibit 17, Plaintiff's Journal Notes, p. 4.

102. Plaintiff formed the belief that she had been discriminated against in Fall 2008, but did not file a charge of discrimination with the Michigan Department of Civil Rights (MDCR) until Spring 2009. Exhibit 1, Plaintiff's dep., pp. 132-133. See also Exhibit 19, Plaintiff's Charge of Discrimination.

103. Plaintiff claims she "believed" that she mentioned possible discrimination by Mr. Lemmer at the September 29, 2009 meeting with Ms. Pixley and Ms. Parker in which she was forewarned that her position was being targeted for layoff. Plaintiff also "believed" that she had been recorded the word "discrimination" in her Journal Notes on that day, but did not. Exhibit 1, Plaintiff's dep., pp. 34-35.

104. This was the first time Plaintiff believed that she used the word "discrimination." Exhibit 1, Plaintiff's dep., p. 40.

105. Plaintiff said she believed Mr. Lemmer did not like her and was targeting her based on his not liking her. Exhibit 1, Plaintiff's dep., p. 38.

106. Plaintiff did not say she felt discriminated against based on disability or weight or FMLA leave. Plaintiff never told anyone at HCCS that she thought that she was discriminated against based on any of these categories. Exhibit 1, Plaintiff's dep., pp. 38, 80-81.

107. Plaintiff said that she told Ms. Pixley and Ms. Parker that the decision was "unfair targeting based on the fact that she was "being laid off" and Mr. Lemmer's negative feelings about her. She believed Mr. Lemmer didn't like her. Exhibit 1, Plaintiff's dep., p. 38.

108. Plaintiff testified that her retaliation complaint was retaliation for taking FMLA leave. It was *not* about her having reported discrimination because "[t]hat hadn't been done yet." That happened in Spring 2009 when Plaintiff reported to the Michigan Department of Civil Rights. Exhibit 1, Plaintiff's dep., p. 203.

109. Plaintiff also testified that she believed that Mr. "Lemmer was looking for a way to get rid of [her]" prior to her FMLA leave. Exhibit 1, Plaintiff's dep., p. 47.

110. North Region Regional Director Sharon Berkobien notified Director of Human Resources Alyson Beck that members of Ms. Berkobien's staff in Saginaw were panicky because Plaintiff had told them that "there were going to be layoffs." Exhibit 10, Beck dep., pp. 8-10.

111. Ms. Beck, Ms. Pixley and Mr. Lemmer met with Plaintiff to discuss the issue. Plaintiff admitted having talked to employees in Saginaw. Exhibit 10, Beck dep., pp. 11-12.

112. Plaintiff admitted during a meeting with Mr. Lemmer, Ms. Pixley and Ms. Beck on October 8, 2008 that she had told other co-workers about "program closings and layoffs at the end of October." Exhibit 17, Plaintiff's Journal Notes, p. 8.

113. Plaintiff was put on paid leave for three days following this discussion while HCCS investigated further. Exhibit 10, Beck dep., pp. 23-25.

114. Plaintiff received an oral reminder on October 13, 2008 for informing co-workers of "potential budget cuts and layoffs in Central Service." Exhibit 20.

115. Plaintiff was notified of her layoff on October 21, 2008. On October 30, 2008, Plaintiff requested a copy of her personnel file from Human Resources. Plaintiff received the file, which included a copy of Plaintiff's original employment application. Exhibit 1, Plaintiff's dep., pp. 22, 101. See also Exhibit 17, Plaintiff's Journal Notes, p. 12.

116. Plaintiff contacted her attorney, Mr. LaFlamme, "nearly immediately" after she was notified of her layoff. Exhibit 1, Plaintiff's dep., p. 100.

**HCCS EMPLOYEES DENY DISCRIMINATORY ANIMUS BASED ON DISABILITY, WEIGHT OR FMLA LEAVE**

117. Mr. Lemmer did not recall having any significant issues with Plaintiff's performance or attendance. Exhibit 6, Lemmer dep., pp. 26-27.

118. Mr. Lemmer did not have personal concerns about Plaintiff's absences in 2008, nor about Plaintiff's weight. Exhibit 6, Lemmer dep., p. 50.

119. Mr. Lemmer did not direct Mr. Geddes not to place Plaintiff in another position at HCCS. Exhibit 6, Lemmer dep., p. 49. See also Exhibit 5, Geddes dep., pp. 31-32.

120. Mr. Lemmer never expressed to Ms. Pixley that he wanted to get rid of Plaintiff, rather than eliminating the training position. Mr. Lemmer never expressed any dislike for Plaintiff or concern about Plaintiff missing work during 2008. Exhibit 9, Pixley dep., pp. 21-22.

121. Plaintiff's behavior was not a factor for Mr. Brown in the decision to eliminate Plaintiff's position. It was purely an economic decision. Exhibit 3, Brown dep., pp. 25-26.

122. Loren Brown did not direct Mr. Geddes not to place Plaintiff in a position. Mr. Brown did not direct Mr. Geddes not to consider Plaintiff for an open position. Exhibit 5, Geddes dep., p. 31.

123. Mr. Geddes testified that no one directed him to place Venus Lombrana in the Family Worker position. Exhibit 5, Geddes dep., p. 26.

124. Mr. Geddes never told Mr. Kruse that he didn't want Mr. Kruse to give Plaintiff work. No one ever told Mr. Kruse not to give any work to Plaintiff. Exhibit 2, Kruse dep., pp. 14-15.

125. Mr. Geddes never expressed any reservation concerning employment of Plaintiff. No one ever expressed any reservation to Mr. Kruse about employing Plaintiff in any capacity. Exhibit 2, Kruse dep., pp. 15-16.

126. No one ever told Mr. Kruse he could not put Plaintiff in the Family Worker position. Exhibit 2, Kruse dep., p. 24.

127. Mr. Kruse was certain that Mr. Geddes never told him not to offer the Family Worker position to Plaintiff. Exhibit 5, Geddes dep., p. 29.

128. Mr. Kruse didn't have a concern about Plaintiff's ability to perform the social worker job and no one ever expressed any reservations to Mr. Kruse about Plaintiff's ability to perform the social worker job. Exhibit 2, Kruse dep., p. 30.

129. Mr. Kruse had no problem with Plaintiff's weight. Exhibit 2, Kruse dep., p. 30.

130. No one at HCCS ever expressed concern or reservations about Plaintiff's attendance. Exhibit 2, Kruse dep., p. 30.

## ARGUMENT

Plaintiff Robin Aldrich was laid off from her job at defendant Holy Cross Children's Services when her position of Senior Trainer was eliminated as part of a substantial reduction-in-force affecting 48 employees in Fall 2008. Plaintiff applied for but was not offered another position as a Family Worker. Plaintiff claims her employment was terminated and she was not offered another job due to:

(1) A disability, in violation of the Americans With Disabilities Act (ADA) and Michigan's Persons With Disabilities Civil Rights Act (PDCRA) and in retaliation for complaining of disability discrimination in violation of the ADA and PDCRA;

(2) Her weight, in violation of Michigan's Elliott-Larsen Civil Right Act (ELCRA) and in retaliation for complaining of weight discrimination in violation of ELCRA; and

(3) In retaliation for taking a Family and Medical Leave Act (FMLA) leave.

HCCS asserts that Plaintiff's Senior Trainer position was eliminated in a substantial reduction-in-force and that Plaintiff was not offered the Family Worker position because another, better-qualified displaced employee was placed in the position. This motion is filed pursuant to Fed. R. Civ. P. 56 because Plaintiff has failed to adduce facts to support her claims of discrimination and retaliation. In addition, her state law claims are barred by a contractual limitations period.

### A. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Tatis v. U.S. Bancorp*, 473 F.3d 672, 675 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *See Lockett v. Suardini*, 526 F.3d 866, 872 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 251-52).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008)). HCCS, as the party moving for summary judgment, bears the initial burden of pointing out to the court that there is an absence of evidence to support Plaintiff's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once HCCS shows that "there is an absence of evidence to support the nonmoving party's case," Plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008). To sustain this burden, Plaintiff may not rest on the mere allegations of her pleadings. In order to survive summary judgment, Plaintiff must provide evidence beyond the pleadings setting out specific facts showing a genuine issue for trial, a burden he cannot sustain. Fed. R. Civ. P. 56(e); *Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007); *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006).

### B. Plaintiff's State Law Claims are Barred By The Limitations Period.

Plaintiff's claims are barred by the contractual period of limitations contained in her employment application and 2005 employee handbook receipt.

> [I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations,

> provided that the shorter period itself shall be a reasonable period.***

*Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608; 67 S.Ct. 1355 (1947).

Michigan courts have consistently upheld the enforceability of a 180-day shortened limitation period contained in an employment application. In *Rory v. Continental Ins. Co.*, 473 Mich. 457, 470 (2005), the Michigan Supreme Court explained "Michigan has 'no general policy or statutory enactment … which would prohibit private parties from contracting for shorter limitations periods than those specified by general statutes.'" *Rory*, 473 Mich. at 471, citing *Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 410 Mich. 118, 139; 301 N.W.2d 275 (1981); ellipsis in original. The contractually shortened limitation period must be enforced as written unless it is in violation of law or public policy:

> [W]e hold that an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy. A mere judicial assessment of "reasonableness" is an invalid basis upon which to refuse to enforce contractual provisions. Only recognized traditional contract defenses may be used to avoid the enforcement of the contract provision. ***

*Id*. at 470.

*Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234 (2001), is the controlling authority which must be applied. In *Timko*, the court rejected the Plaintiff's arguments that a shortened period of limitation is unenforceable. As an issue of first impression, the court held that a contractually shortened period of limitations of 180 days is reasonable and enforceable:

> [P]arties may contract for a period of limitations shorter than the applicable statute of limitation provided that the abbreviated period remains reasonable. The period of limitations "is reasonable if (1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be ascertained." *Timko*, 244 Mich. app. at 242; citation omitted.

The *Timko* court held that employment and wages constituted consideration and because 180 days is reasonable the employment application is not a contract of adhesion. *Timko*, at 242. The same result obtained in *Clark v. DaimlerChrysler Corporation*, 268 Mich. App. 138 (2005), leave to appeal denied 475 Mich 875 (2006). *See also Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352 (6th Cir. 2004).

The federal courts in Michigan have repeatedly recognized the enforceability of a shortened 180-day limitation period under Michigan law. See *Myers v. Western-Southern Life Insurance Company*, 849 F.2d 259 (6th Cir. 1988) and *Wright v. DaimlerChrysler Corp.*, 220 F.Supp.2d 832 (E.D. Mich. 2002).

There are no facts to distinguish the instant case from the holding in *Timko*, and its progeny upholding the enforceability of a 180-day shortened period of limitations. The language in HCCS's application and handbook receipt is unambiguous. A six (6) month period of limitation is not inherently unreasonable. *Timko*, 244 Mich at 243.

In this case, Plaintiff believed in Fall 2008 that she was subject to discrimination. She asked for and received a copy of her personnel file which contained her employment application in late October 2008. She contacted counsel almost immediately after learning that she was going to be laid off. She was notified that she had been taken off payroll in March 2009. She filed her charge of discrimination with the Michigan Department of Civil Rights in April 2009. Plaintiff had ample time to file her discrimination claim within the agreed time frame. Plaintiff did not file this lawsuit until 17 months later. Defendant is entitled to summary judgment on her state law claims.

### C. PLAINTIFF CANNOT SHOW DISCRIMINATION BASED ON DISABILITY OR WEIGHT

If Plaintiff's claims are not time-barred, she must show discrimination by direct or indirect evidence. *Rowan v Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544 (6th Cir. 2004);

*Hazle v Ford Motor Co.*, 464 Mich 456-462 (2002). Direct evidence is evidence which proves the existing facts without inference. *Rowan*, 360 F.3d at 548; *Hazle*, 464 Mich at 462. Where Plaintiff has no direct evidence, she can proceed under *McDonnell Douglas Corp. v Green*, 411 U.S. 792; 93 S.Ct. 1817 (1973). *McDonnell Douglas* permits a Plaintiff to raise an inference of discrimination by showing a *prima facie* case.

The elements of a *prima facie* case are:

- Plaintiff was a member of a protected class;
- Plaintiff was discharged;
- Plaintiff was qualified for the position held; and
- Plaintiff was replaced by someone outside the protected class.

If Plaintiff succeeds, Defendant can rebut the inference by articulating a legitimate business reason. *Texas Dept of Community Affairs v Burdine*, 450 U.S. 248; 101 S.Ct. 1089 (1981). If Defendant meets its burden, Plaintiff must provide evidence that the Defendant's proffered explanation was a pretext for unlawful discrimination. *Rowan*, 360 F.3d at 547; *Hazle*, 464 Mich at 465-466.

This approach applies to disability discrimination under the ADA and PDCRA (*EEOC v. DaimlerChrysler Corp*., 111 Fed Appx. 394, 398 (6th Cir. 2004); *Chmielewski v. Xermac, Inc.*, 457 Mich 593, 602 (1998)) and to weight discrimination under ELCRA. *Hein v All America Plywood Co., Inc.*, 232 F.3d 482, 489 (6th Cir. 2000).

In a reduction-in-force case, the Plaintiff is not replaced, so the fourth element of the *McDonnell Douglas* approach is "modified." Instead, Plaintiff must "provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the Plaintiff for discharge for *impermissible reasons*.'" *Rowan*, 360 F.3d 544, 547, quoting *Ercegovich v Good Year Tire and Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1988), emphasis added. See also *Matras v. Amoco Co.*, 424 Mich 675, 684 (1986) holding,

> "[t]o establish a *prima facie* case of . . . discrimination when an employer lays off employees for economic reasons, the courts have required the employer to present sufficient evidence on the ultimate question – whether [the protected status] was a determining factor in the decision to discharge the . . . protected employee."

Rumors, conclusory allegations and subjective beliefs are not evidence of discrimination sufficient to show pretext. Nor can evidence of discrimination be based on vague, ambiguous or isolated remarks. *Hein*, 232 F.3d at 488.

This is a reduction-in-force case as Plaintiff's duties were absorbed by Ms. Pixley and Ms. Parker and/or accomplished electronically. Plaintiff cannot show a *prima facie* case of disability or weight discrimination because she has not proffered evidence that she was singled out for discharge because of her *disability* or *weight*. In none of Plaintiff's testimony or Journal Notes does Plaintiff mention any concern that any event was motivated by disability or weight, let alone, that disability or weight was a motivating factor in the decision to eliminate the I.S. Trainer position.

Plaintiff cites three events. The first one was: one, isolated, ambiguous comment made by Mr. Lemmer more than six months before the layoff that Mr. Lemmer liked Plaintiff's green shirt. There is no connection to disability and, at best, a statement that Plaintiff's shirt was big, in addition to being green. The second event was Mr. Lemmer's declining Plaintiff's request to take Fridays off to do her field placement work. There is no connection asserted to her disability or weight. The third event was the meeting held with Mr. Lemmer to discuss Plaintiff's response to an email from Ms. Pixley inquiring why Plaintiff was seen leaving the building in an HCCS van in the middle of the day with her son. Nothing in Plaintiff's testimony or detailed Journal Notes of this meeting indicates that this interaction was motivated by disability or weight. On the contrary, Plaintiff's Journal Notes regarding this meeting state that she felt singled out by Mr. Lemmer "for a reason *unknown* to [her]."

Plaintiff also testified and recorded in her Journal Notes that Mr. Lemmer simply like her. Personal dislike is not discriminatory animus. See *Barnett v. Dept. of Veterans Affairs*, 153 F.3d 338, 342-343 (6th Cir. 1998).

Even if Plaintiff can show a *prima facie* case of disability or weight discrimination, HCCS has rebutted any inference because the decision to lay Plaintiff off was motivated by economic considerations and the need to reduce staff. Plaintiff cannot show that HCCS' articulated reason was a pretext to cover its true motive of discharging Plaintiff because of her disability or weight. Plaintiff was only one of 48 employees laid off by HCCS in fall 2008. Mr. Brown, Mr. Lemmer and Ms. Pixley all testified that they looked at each position to determine which position they could do without if they had to. The I.S. Senior Trainer position was selected because newer employees had greater computer literacy and HCCS was able to do training electronically. In fact, HCCS had looked at this training position during previous reductions in 2007.

Plaintiff has no evidence that the layoff was based on disability. The only basis for her claim of weight discrimination is her subjective belief, speculation and an isolated ambiguous comment by Mr. Lemmer. Mr. Lemmer denied any discriminatory animus, as did every other HCCS employee that Plaintiff deposed. Plaintiff simply has no evidence that the layoff was a pretext for discrimination based on disability or weight.

Defendant is entitled to summary judgment on these claims.

### D. PLAINTIFF CANNOT SHOW HER LAYOFF WAS DUE TO RETALIATION FOR REPORTING DISCRIMINATION

To show retaliation, a plaintiff must show that 1) she engaged in protected activity; 2) defendant knew of the protected activity; 3) after that, defendant took an adverse action toward plaintiff and 4) there was a causal connection between the protected activity and the adverse action. *DiCarlo v Potter*, 358 F.3d 408, 420 (6th Cir. 2004). *See also Jacklyn v Schering-Plough*

*Healthcare Products Sales Corp.*, 176 F.3d 921 (6th Cir. 1999).

Plaintiff cannot show that she engaged in protected activity. Plaintiff did not report discrimination to the Michigan Department of Civil Rights until April 2009. Plaintiff claims she used the term "discrimination" at her September 29, 2008 meeting with Ms. Pixley and Parker, but she did not say discrimination based on disability or weight or FMLA leave. Her Journal Notes only say, in what appears to be an editorial comment, that the decision was "unfair targeting." Either way, there is no mention that the discrimination or targeting was based on any protected category. Plaintiff testified she believed the targeting was based on Mr. Lemmer's dislike. Personal dislike is not discriminatory animus. *Barnett, supra*. There was no basis for Ms. Pixley to understand that Plaintiff was reporting discrimination based on disability or weight.

Plaintiff did not report discrimination to Human Resources as directed by the Employee Handbook. Plaintiff worked in the same administration building (Cracciolo Center) as Ms. Beck that Mr. Lemmer described as being about 100 yards long. Plaintiff offered no explanation for not talking to Ms. Beck about discrimination.

Even assuming that Plaintiff's activity on September 29, 2008 was protected activity, the purpose of the meeting was to forewarn Plaintiff of possible layoff. Thus, Plaintiff's layoff was already under consideration *before* the meeting. More importantly, Plaintiff testified at deposition that she was not claiming the decision to lay her off was made in retaliation for a report or claim of discrimination based on disability or weight because she didn't do that until Spring 2009. Plaintiff's retaliation claims should be dismissed.

### E. PLAINTIFF CANNOT SHOW THAT SHE WAS DENIED ANOTHER POSITION FOLLOWING HER LAYOFF DUE TO DISCRIMINATION OR RETALIATION

The *McDonnell Douglas* approach applies to Plaintiff's efforts to obtain another position at HCCS. In a case involving application for a job, the elements of a *prima facie* case are: 1)

plaintiff belongs to a protected category; 2) plaintiff applied and was qualified for the position; 3) despite his qualifications, plaintiff was rejected and 4) after the rejection the position remained open and the employer continued to seek applicants. *McDonnell Douglas*, 411 U.S. at 802.

Plaintiff cannot show a *prima facie* case because, at the time she inquired about the Family Worker position, she was not qualified for the position. She did not have a bachelor's degree in a required subject. Though Mr. Kruse sought an exemption from the State, this was only the first step in the process. HCCS also had to grant an exemption which depended in part on whether other qualified candidates applied. Before the State exemption was received and before Mr. Kruse sought an exception to HCCS' requirements, Mr. Geddes had decided to eliminate one of the Division Manager positions and to move Venus Lombrana from a Division Manager position into the open Family Worker position.

The evidence adduced shows that Ms. Lombrana told Plaintiff on November 18, 2008 that Mr. Geddes wanted to talk to her. Mr. Kruse told Plaintiff the same thing in a November 19, 2008 email at 6:00 a.m. The letter from the State was dated November 19, 2008. Clearly then, when Mr. Geddes decided to move Ms. Lombrana into the Family Worker position, Plaintiff wasn't qualified for the position. When the exception came in, the position was filled. No one pursued an exception from HCCS' requirements.

Plaintiff was not rejected for any other position at HCCS. Mr. Geddes agreed that Plaintiff could work as a Treatment Specialist. Plaintiff was not interested in that job. Despite trading phone calls with Mr. Kruse, Plaintiff never worked any hours as a Treatment Specialist. On December 3, 2008 Plaintiff commenced employment with the Alzheimer's Association.

Since Plaintiff wasn't qualified for the Family Worker position at the time it was filled, she does not have a *prima facie* case. Even if she did, HCCS placed a better qualified candidate into the job. Ms. Lombrana had the State required degree, plus years of experience in social

worker positions at HCCS. Plaintiff cannot show this action was based on her disability, weight or retaliation.

### F. PLAINTIFF CANNOT SHOW ANY DECISION WAS MOTIVATED BY HER FMLA LEAVE

An employer may not use "the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). To show that Plaintiff was discriminated or retaliated against because of her FMLA leave, she first must present evidence that HCCS discriminated against her because of her FMLA leave, i.e., that her taking FMLA leave was "a motivating factor" in the decision. *Hunter v. Valley View Local Schools,* 579 F.3d 688, 690-691 (6th Cir. 2009).

To show that FMLA leave was a motivating factor, Plaintiff can use direct or indirect evidence. *Walters v. Pride Ambulance Co*., 683 F.Supp.2d 580, 593 (W.D. Mich. 2010). If Plaintiff does not have direct evidence, she can show FMLA leave was a motivating factor by showing: 1) she engaged in protected activity; 2) she suffered an adverse employment action and 3) a causal connection between the two. *Walters, citing Daugherty v. Sajar Plastics, Inc*., 544 F.3d 696, 707 (6th Cir. 2008). Under this approach, Plaintiff first must show that she suffered an adverse action under circumstances which give rise to an inference of unlawful discrimination. *Walters, citing Bryson v. Regis Corp*., 498 F.3d 561, 570 (6th Cir. 2007).

Temporal proximity may constitute evidence of a causal connection. *Id*. But "temporal proximity *alone* will not support an inference of retaliation discrimination where there is no other compelling evidence." *Blume v. Potter*, 289 F.3d.Appx. 99, 106 (6th Cir. 2008). See also *Steiner v. Henderson*, 1221 Fed.Appx. 552 (6th Cir. 2005).

Here, Plaintiff has only temporal proximity. Plaintiff returned from FMLA leave on August 4, 2008 and was formally notified of layoff on October 21, 2008. Even assuming this were sufficient, HCCS has demonstrated a legitimate reason for her layoff: decline in revenue, decline in enrollment, Plaintiff's position was the one they could do without or cover with other

employees.

Having articulated this reason, the burden would shift back to Plaintiff to show HCCS' reason is pretextual, i.e., a) the reason is false; b) the reason is insufficient or c) the reason wasn't the actual reason. *Walters*, 683 F.Supp.2d at 593-594, citing *Bryson*, 498 F.3d 570 and *Manzer v. Diamond Shamrock Chems. Inc*., 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff cannot show pretext. HCCS laid off 48 employees in fall 2008 due to declining enrollment and revenues. All Plaintiff has is the fact that the layoff occurred two months after her FMLA leave and her subjective belief that Mr. Lemmer didn't like her. Plaintiff testified that she believed that Mr. Lemmer didn't like her long before her FMLA leave. She testified that she believed he didn't like her as early as April 1, 2008. Plaintiff also testified that she believed that Mr. Lemmer wanted to get rid of her *before* she took FMLA leave. As a result, her FMLA leave was not a motivating factor in the decision to lay her off. Mr. Lemmer had no involvement in the decision to place Ms. Lombrana in the Family Worker position.

Thus Plaintiff cannot show her FMLA leave was a factor in any decision affecting Plaintiff's employment. This claim should be dismissed.

**CONCLUSION**

Plaintiff believed that Mr. Lemmer didn't like her. Dislike is not discriminatory animus. Plaintiff cites nothing about her interaction with Mr. Lemmer that supports a claim that the dislike was based on disability or weight or retaliation or FMLA leave or that any decision affecting her employment was. HCCS should be granted summary judgment on all of Plaintiff's claims.

BODMAN PLC

By: /s/ Karen L. Piper
Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
248-743-6025

Attorneys for Defendant

Dated: August 3, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Richard N. LaFlamme.

BODMAN PLC

By: /s/ Karen L. Piper
Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
248-743-6025
Attorneys for Defendant
kpiper@bodmanlaw.com