UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN ALDRICH,

Plaintiff,

-v-

BOYSVILLE OF MICHIGAN, INC., a Michigan corporation, doing business as HOLY CROSS CHILDREN'S SERVICES,

Defendant.

Case No. 4:10-cv-13515-AC

Hon. Mark Goldsmith

_______________________________________________/

LAW OFFICES JEFFREY S. BURG ESQ
By: Jeffrey S. Burg (P38381)
29777 Telegraph Road, Suite 2447
Southfield, MI 48034
(248) 864-4376
Attorneys for Plaintiff
jburg@comcast.net

BODMAN PLC
By: Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6025
Attorneys for Defendant
kpiper@bodmanlaw.com

BELLANCA, BEATTIE & DELISLE, P.C.
By: James V. Bellanca, Jr. (P10663)
James C. Zeman (P22711)
20840 Vernier Road
Harper Woods, MI 48225
(313) 882-1100
jbellanca@bellanca.com
jzeman@bellanca.com

_______________________________________________/

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**DEFENDANT'S REPLY TO PLAINTIFF'S COUNTER STATEMENT OF MATERIAL FACTS**

Plaintiff's "contest" of many paragraphs in Defendant's Statement of Material Facts do not comply with Section II, B, 3 of this Court's Case Management and Scheduling Order, dated December 23, 2010. Section II, B, 3 requires Plaintiff to explain the basis for her factual disagreement and reference and cite "record evidence." Plaintiff often contested Defendant's Statement of Facts but did not explain or did not cite references. Many times Plaintiff did not contest Defendant's facts but added facts which did not create a genuine issue of material fact as to the facts Defendant stated. These defective contests should be stricken.

11. Plaintiff does not contest the testimony that was given and provides no explanation or reference. She added additional testimony of her own, then observed that the additional testimony was not supported with documents. Plaintiff's contest should be stricken.

12. Plaintiff does not explain the basis for the contest or provide a reference or cite to record evidence. Plaintiff's contest should be stricken.

13. Plaintiff does not explain the basis for the contest or provide a reference or cite to record evidence. Plaintiff's contest should be stricken.

14. Plaintiff does not explain the basis for the contest or provide a reference or cite to record evidence. Plaintiff's contest should be stricken.

15. Plaintiff does not contest Mr. Brown's testimony that Plaintiff was not the only HCCS employee laid off in 2008, nor Defendant's fact that there were approximately 48 HCCS employees laid off between October 2008 and December 2008, nor provide any reference or citation. Plaintiff's contest should be stricken. She merely observed that Defendant's Exhibit 8 was a compilation of information regarding the other employees HCCS laid off during this time period. This is true as Plaintiff well knows. She produced Defendant's Exhibit 8 with her Initial

Disclosures, pp. 79-84. *See* Defendant's Exhibit 24, attached.[1] Page 89 of Plaintiff's Initial Disclosures is a letter from Christina Beltz of the Michigan Department of Civil Rights (MDCR) who requested HCCS to "[p]rovide the name, job title, sex, height and weight of the other employees who were laid off" in connection with her investigation of the Charge of Discrimination filed by Plaintiff. *See* Defendant's Exhibit 24, Plaintiff's Initial Disclosures, p. 94. Defendant's Exhibit 8 was Defendant's response to this request listing the information requested.

16. Plaintiff does not contest Mr. Lemmer's testimony, nor provide a reference or citation. She merely observed that Defendant did not also support this fact with a document. Plaintiff's contest should be stricken.

17. Plaintiff does not contest Mr. Brown's testimony, nor provide a reference or citation. She merely observed that Defendant did not also support this fact with a document. Plaintiff's contest should be stricken.

18. Plaintiff does not contest Mr. Lemmer's testimony. She offered her own Journal Notes to the effect that she "discovered," but does not say how or when, that some employees who reported to Mr. Lemmer were not asked to provide information regarding their daily activities. Even accepting Plaintiff's Journal Notes as true, Plaintiff does not contest that the following I.S. Department employees were required to and did provide information regarding their daily activities to Mr. Lemmer: Eileen Parker, I.S. Manager; Mark Huff, I.S. Support Tech; and Steve Myer, I.S. Hardware Tech. *See* Defendant's Exhibit 25, I.S. Department

---

[1] Defendant submitted 23 exhibits with its motion and brief and resumes here with number 24.

Organizational Chart and Defendant's Exhibit 26, Plaintiff's dep., pp. 273, 285-288,[2] identifying the co-worker who held each position in the organizational chart at the time of plaintiff's layoff. Plaintiff's contest should be stricken.

19. Plaintiff purports to contest Mr. Lemmer's testimony that he and Ms. Pixley and Ms. Parker discussed every I.S. Department position to determine if they could survive without it, by adding information from her own Journal Notes that she was told that Messrs. Brown and Lemmer had targeted her position as one they could do without. Plaintiff's Journal Notes do not create a material fact issue. The fact that Plaintiff was told that Messrs. Brown and Lemmer targeted Plaintiff's position for layoff does not contradict that Mr. Lemmer, Ms. Pixley and Ms. Parker discussed every I.S. Department position before a decision was made that Plaintiff's position was the one selected as the most expendable. As Ms. Parker testified, "Kathy [Pixley] was given a directive to find one position to eliminate from the department." Plaintiff's Exhibit 3, p. 345; emphasis added. Nor does Ms. Parker's testimony contradict the fact that Plaintiff's position was determined to be the most expendable. Plaintiff testified that at the September 29, 2008 meeting at which she was told that they were looking at her position for layoff, Ms. Pixley explained why other positions were not selected, *i.e.*, if they laid off Steve [Myer] they would not have a Hardware Tech and if they laid off Mike Grulke she "would have to manage the network and 'do all that work.'" Defendant's Exhibit 1, Plaintiff's dep., p. 29. Plaintiff's contest should be stricken.

20. Plaintiff's testimony does not contradict that discussions were held or determinations were made that Plaintiff's position was the most expendable before Plaintiff was

---

[2] Defendant attaches additional excerpts of Plaintiff's deposition hereto as Exhibit 26.

told that they were looking at her position for layoff. Plaintiff's contest should be stricken.

21. Plaintiff's testimony does not contradict that discussions were held or determinations were made that Plaintiff's position was the most expendable before Plaintiff was told that they were looking at her position for layoff. Plaintiff's contest should be stricken.

24. Plaintiff does not contest Mr. Brown's testimony. She merely <u>adds</u> that some of the laid off employees found other jobs at HCCS. This is irrelevant. Moreover, it demonstrates by negative implication that other employees other than Plaintiff, did not find other jobs. Plaintiff's contest should be stricken.

28. The correct reference for this fact should be Defendant's Exhibit 9, Pixley dep., p. 19, not p. 29. Pixley testified that she had a discussion with Mr. Lemmer. Mr. Lemmer said, Mr. Brown said, one of the layoffs had to come from I.S. "and we discussed which position we could possibly do without." Defendant's Exhibit 9, Pixley dep., p. 19.

38. Plaintiff admits the fact but adds an argument which should be stricken here.

44. Plaintiff does not contest Defendant's fact. She adds facts. Ms. Beck's testimony speaks for itself. Ms. Beck testified that Mr. Kruse asked her "what would be the next step" in HCCS's process "if he got the approval from licensing" "but it never went beyond that." Ms. Beck never gave Mr. Kruse an opinion on granting Plaintiff an "internal exception." Defendant's Exhibit 10, Beck dep., p. 16. Plaintiff's contest should be stricken.

52. Plaintiff's contest does not contradict Mr. Geddes' testimony that he had decided to place Venus Lombrana, who was being laid off as a Division Manager, into the Ford Family Worker position. Plaintiff's Exhibit 7 clearly states that the Herrick P.C. (*i.e.*, Program Coordinator) was being assigned to the Ford FSW (Family Social Worker) position <u>temporarily</u> "until Herrick [program] re-opens." Plaintiff's contest should be stricken.

59. Plaintiff contests that there is no documentary evidence that Mr. Geddes planned to place Ms. Lombrana in the Ford Family Worker position. Documentary evidence is not required. The fact that the position was filled on a temporary basis by another employee does not contradict Mr. Geddes' decision to place Ms. Lombrana in the position, as he clearly testified was his plan.

"Q. What do you remember about the request to Rick Kruse to have Robin see you?

A. That it would be -- that I would tell her directly about the restructuring, and that there was no longer a position of family worker.

Q. What restructuring were you referring to?

A. We had layoffs at that time, and one of the managers who had previously worked as a therapist, her position was going to be eliminated, and we were going to move -- assign her to be the family worker in the open position.

Q. Where was this open position? Where would the person who filled it work?

A. I believe it was Ford Hall. Defendant's Exhibit 5, Geddes dep., pp. 24-25.

Q. Back in that time frame how many boys would have normally been assigned to Ford Hall?

A. Approximately 13.

Q. How many social workers in that time frame would have been assigned to Ford Hall?

A. 2.

Q. And how would those social workers share responsibility?

A. One would have been primarily responsible for group therapy, and one primarily responsible for family therapy.

Q. Do you remember which position it was that was open?

A. Family therapy.

Q. Who was the employee that was ultimately placed in that position?

A. Venus Lombrana.

Q. Who placed her in that position?

A. I did.

Q. Were you directed to place her in that position by anyone?

A. No. Defendant's Exhibit 5, Geddes dep., pp. 25-26.

Q. So backing up: At the time that you said you told Rick Kruse that you wanted to talk to Robin -- strike that. I got that wrong. At the time that Rick Kruse contacted Robin telling her that you wanted to speak with her, you recall being aware that the social worker position was going to be filled by Venus Lombrana and hence wouldn't be available. Roughly. Did I get that right?

A. Yes." Defendant's Exhibit 5, Geddes dep., p. 29.

Plaintiff's contest should be stricken.

60. The temporary assignment of the Herrick Program Coordinator into the Ford Family Worker position does not contradict Mr. Geddes' decision, as part of the restructuring, to place Ms. Lombrana into the Ford Family Worker position after Herrick reopened. Plaintiff's contest should be stricken.

63. Plaintiff's contest does not cite a reference or citation. Plaintiff adds an argument. There was evidence that Ms. Lombrana was eligible for exemption. Mr. Geddes testified that Ms. Lombrana had been a therapist before. Defendant's Exhibit 5, Geddes dep., pp. 25-26. Plaintiff's contest should be stricken.

64. Plaintiff's Exhibit 7, stating that the Herrick Program Coordinator was re-assigned to the Ford Family Worker position as of Tuesday, November 18, 2008, confirms

Defendant's fact that HCCS did not need Plaintiff to perform Family Worker duties as a Treatment Specialist, Temporary On-Call. Plaintiff's contest should be stricken.

68. Plaintiff's testimony disputes Defendant's fact that Plaintiff and Mr. Kruse exchanged phone calls for a few weeks, but the fact is not material.

69. Plaintiff does not contest Defendant's fact. She merely adds her own. Plaintiff's contest should be stricken.

89. Plaintiff does not contest that Defendant accurately described Plaintiff's deposition testimony in ¶ 89 of its Statement of Material Facts regarding Mr. Lemmer's tracking Plaintiff's comings and goings. Plaintiff testified that she was referring exclusively to Mr. Lemmer's inquiry about her riding in an HCCS van with her son. Plaintiff's Exhibit 5, Plaintiff's dep., p. 174. Plaintiff did not testify that Mr. Lemmer discriminated against her by tracking her comings and goings and not greeting her. She testified that that is why she believed he didn't like her. Defendant's Exhibit 1, Plaintiff's dep., pp. 154-155. Plaintiff's contest should be stricken.

103. Plaintiff is correct. Plaintiff testified that she believed that she used the word discrimination in her Journal Notes of the September 29, 2008 meeting with Ms. Pixley and Ms. Parker. Plaintiff testified that she was certain that she used that word even though she did not record it in her Journal Notes. Defendant's Exhibit 1, Plaintiff's dep., pp. 34-35. Plaintiff did not say that it was based on any protected category. (Defendant's Exhibit 26, Plaintiff's dep., p. 38, 47, 139-140).

108. Plaintiff does not contest her own deposition testimony. She argues that she should not be bound by her admission. Plaintiff's contest should be stricken.

109. Plaintiff testified that she believed both before and after her FMLA leave that Mr.

Lemmer was looking for a way to terminate her employment. If he was looking for a way before her FMLA leave, that negates her assertion that the layoff was based on her FMLA leave.

112. Plaintiff does not contest Defendant's fact or provide a citation or reference. She adds an explanation for her action. Plaintiff's contest should be stricken.

117. Nothing in Plaintiff's Exhibit 8 indicates Mr. Lemmer had a problem with Plaintiff's performance or attendance. Mr. Lemmer did not deny having problems with Plaintiff's telling co-workers that layoffs were coming. Plaintiff was issued an oral reminder on October 13, 2008 for telling employees of impending layoffs (*See* Defendant's Exhibit 20). Mr. Lemmer did not deny having problems with Plaintiff's "disrespectful" refusal to answer Ms. Pixley's email inquiry about Plaintiff riding in an HCCS van with her son. (Defendant's Exhibit 17, Plaintiff's Journal Notes, pp. 2-4). Mr. Kruse's email to Mr. Geddes speaks for itself. Mr. Kruse said:

> "Robin – no real hold up. John Lemmer told me of problems they had with her and the tone was he wasn't thrilled with her staying on board. Alyson seems supportive (possibly even encouraging) the idea of hiring her." Plaintiff's Exhibit 8; emphasis added.
>
> Plaintiff's contest should be stricken.

118. Plaintiff does not contest Mr. Lemmer's testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 1-10 of Plaintiff's Statement of Additional Facts in its Reply to Plaintiff's Additional Material Facts below.

119. Plaintiff does not contest Mr. Lemmer's testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 1-10 of Plaintiff's Statement of Additional Facts in its Reply to Plaintiff's Additional Material Facts below.

120. Plaintiff does not contest Mr. Lemmer's testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 1-10 of Plaintiff's Statement of Additional Facts in its Reply to Plaintiff's Additional Material Facts below.

121. Plaintiff does not contest Mr. Brown's testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 1-10 of Plaintiff's Statement of Additional Facts in its Reply to Plaintiff's Additional Material Facts below.

122. Plaintiff does not contest Mr. Geddes' testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 1-10 of Plaintiff's Statement of Additional Facts in its Reply to Plaintiff's Additional Material Facts below.

123. Plaintiff does not contest Mr. Geddes' testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 1-10 of Plaintiff's Statement of Additional Facts in its Reply to Plaintiff's Additional Material Facts below.

124. Plaintiff does not contest Mr. Geddes' and Mr. Kruse's testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 1-10 of Plaintiff's Statement of Additional Facts in its Reply to Plaintiff's Additional Material Facts below.

125. Plaintiff does not contest Mr. Geddes' testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 4-10 of Plaintiff's Statement of Additional Facts below.

126. Plaintiff does not contest Mr. Kruse's testimony. Plaintiff's contest should be stricken. Defendant will respond to ¶¶ 4-10 of Plaintiff's Statement of Additional Facts below.

127. Plaintiff does not contest Mr. Geddes' testimony. Plaintiff's contest should be

stricken. Defendant will respond to ¶¶ 4-10 of Plaintiff's Statement of Additional Facts below.

130. Admitted that Plaintiff's 2008 performance evaluation mentions Plaintiff's absence. *See* Plaintiff's Exhibit 9 for the complete statement and ¶ 2 in Defendant's Reply to Plaintiff's Statement of Additional Material Facts below, which quotes Ms. Parker's entire statement about Plaintiff's absences.

## DEFENDANT'S REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

1. Admitted.

2. Ms. Parker's notes in full on Plaintiff's 2008 Performance Evaluation mention Plaintiff's absences for illness (not expressly related to her foot condition), not her disability, along with multiple extra demands on Plaintiff's time, including attending school and performing field placement internships:

> "The past year has been a challenging one for Robin due to multiple days lost due to illness and FMLA leave. In addition, Robin attends school and tries to align her internships to benefit the agency as she completes her MSU program. Though we understand that the health related absences are beyond Robin's control and we have tried to be supportive of her educational goals, these absences have created an additional burden on I.S. staff." Emphasis added.

It should also be noted that Plaintiff received a "2" "Fully meets standards" on her 2008 Performance Evaluation for "Meets attendance policy." Plaintiff's Exhibit 9. This is the same rating that she received on her 2007 Performance Evaluation. Plaintiff received a rating of "2" on each. *See* Defendant's Exhibit 27, p. 2.

3. Defendant contests this fact. Plaintiff claims Mr. Lemmer "demonstrated

hostility." This is not a fact. It is an inference. Also, the facts from which the inference are drawn are not true. While Plaintiff testified Mr. Lemmer "tracked her comings and goings" (plural), she explained that she was referring exclusively to Mr. Lemmer's inquiry about an unusual "going," *i.e.*, when Mr. Lemmer inquired why Plaintiff was seen leaving the building in an HCCS van driven by Plaintiff's son. Plaintiff was asked if there were any reason other than this one incident to think that Mr. Lemmer was tracking her comings and goings. She answered, "No." Plaintiff's Exhibit 5, p. 174. Lastly, even if Mr. Lemmer's inquiry demonstrated hostility toward Plaintiff, there is no evidence to suggest the hostility was based on disability or FMLA leave. On the contrary, in her Journal Notes about her meeting with Mr. Lemmer about Plaintiff's riding in an HCCS van with her son, Plaintiff wrote, "I have been singled out by John [Lemmer] for a reason that is unknown to me." Defendant's Exhibit 17, Plaintiff's Journal Notes, p. 4; emphasis added.

4. Mr. Kruse's email speaks for itself. It says any issues Mr. Lemmer may have discussed did not create an impediment to Plaintiff working in a social work position. Mr. Kruse wrote "Robin – no real hold-up." Plaintiff's Exhibit 8.

5. Defendant does not contest that Mr. Kruse and Plaintiff were discussing the possibility of Plaintiff applying for the family worker position at Ford.

6. Defendant admits that Plaintiff accurately transcribed her Journal Notes but does not admit the truth of the statements therein. They are not accurate. For example, Plaintiff testified that the events she transcribed in paragraph 6 was mistakenly recorded as having occurred on November 19, 2008, when she believed at deposition that they occurred on November 18, 2008. Exhibit 26, Plaintiff's dep., pp. 87-88.

7. Defendant admits that Plaintiff accurately transcribed her Journal Notes, but not

the truth of the statements therein. They are hearsay and not necessarily accurate.

8. Defendant cannot respond to Plaintiff's claim that she saw an on-call list in February 2009 and that her name was not on it. Several HCCS employees (*i.e.*, Mr. Geddes, Mr. Kruse and Ms. Beck) testified to having seen on call lists that included Plaintiff's name. Defendants also produced some such lists. Defendant's Exhibit 23. Defendant does not dispute that Plaintiff never worked as an on-call worker. The position was Temporary On-Call, Treatment Specialist. Exhibit 26, Plaintiff's dep., p. 23. Plaintiff did not want this position. She only was willing to work it while she was waiting for the State to grant her a variance for the Family Worker position. *See* Defendant's Exhibit 14, Plaintiff's Journal Notes from November 20, 2008 "[I]n the meantime, I am ready and available to work as a TS <u>until</u> Steve Garcia grants an exception for the FW position." Emphasis added.

9. Plaintiff's Journal Notes of November 20, 2008 speak for themselves. Plaintiff recorded that Mr. Geddes told Plaintiff that he couldn't use her. "Bill [Geddes] mentions there is no family worker position as they will be <u>restructuring</u>." Defendant's Exhibit 14, Plaintiff's Journal Notes. Mr. Geddes explained at his deposition that he planned to place Venus Lombrana in the position because Ms. Lombrana's Division Manager position was being eliminated due to restructuring and Ms. Lombrana had experience as family worker. Defendant's Exhibit 5, Geddes dep., pp. 24-25. Plaintiff's Exhibit 7 also shows that the Herrick Program Coordinator was placed in the Ford Family Worker job on a temporary basis while the Herrick Program was shut down before its conversion to an SOT (Sexual Offender Training) program.

10. Admitted.

## DEFENDANT'S SUPPLEMENTAL MATERIAL FACTS[3]

131. Plaintiff's congenital foot conditions are bunions and hammer toes. Exhibit 26, Plaintiff's dep. p. 280.

132. Plaintiff did not tell her first or second line supervisors that she had these conditions. She said only that her feet "bother[ed]" her or she was "having a lot of problems" with her feet. Exhibit 26, Plaintiff's dep., pp. 280-282.

133. Plaintiff never asked for an accommodation. Exhibit 26, Plaintiff's dep. 282.

134. The 2008 foot surgery for which Plaintiff took FMLA leave was to remove the bunion and release the nerve for the hammer toe. Exhibit 26, Plaintiff's dep., p. 282.

135. Plaintiff attended classes and did her field placement work during her FMLA leave. Exhibit 26, Plaintiff's dep., pp. 284-285.

136. It was initially anticipated and Plaintiff told her supervisor that her FMLA leave would be two to four weeks. Exhibit 26, Plaintiff's dep., p. 188.

137. When Plaintiff submitted her FMLA paperwork, the leave was planned from May to July. Plaintiff's leave was extended to August 4, 2008. Exhibit 26, Plaintiff's dep., pp. 188-189.

138. Plaintiff's leave left the I.S. department short-staffed. Exhibit 26, Plaintiff's dep.,

---

3 Defendant's motion and brief contained 130 facts. Defendant resumes here with number 131.

p. 64-65.

139. Plaintiff went on FMLA leave in May 2008 and returned on August 4, 2008. She had no complaints about her leave. Plaintiff's dep., pp. 124-125.

140. Though Plaintiff recalled at her deposition that she used the term, "discriminated against" at the September 29, 2008 meeting with Ms. Pixley and Ms. Parker, Plaintiff did not record that term in her Journal Notes describing the meeting. Exhibit 26, Plaintiff's dep., pp. 34-35. *See also*, Defendant's Exhibit 17, pp. 6-7.

141. Plaintiff did not tell Ms. Pixley or Ms. Parker that she felt discriminated against based on disability or FMLA or any other protected category. Plaintiff testified, that she felt she was targeted based on "[t]he fact that [she] was being laid off;" "based on John Lemmer's feelings about [her];" based on John Lemmer's "attitude toward [her]." Exhibit 26, Plaintiff's dep., p. 38, 47.

142. Plaintiff did not tell her supervisors that she was discriminated against based on any protected category. Exhibit 26, Plaintiff's dep., pp. 139-140.

143. Plaintiff received a "2" for "meets attendance policy" on her 2008 performance evaluation, just as she had on her 2007 performance evaluation. Exhibit 27, Plaintiff's 2007 performance evaluation, p. 2.

144. Plaintiff's immediate supervisor Eileen Parker did Plaintiff's 2008 review. No one told her what to put in it or what to leave out. Exhibit 28, Parker dep., p. 17.

145. Ms. Parker did not recall John Lemmer ever asking her about Plaintiff's absences

or ever commenting on Plaintiff's absences, Exhibit 28, Parker dep., p. 21.

146. Ms. Pixley testified that Mr. Lemmer never expressed concerns about Plaintiff's absences from work during 2008. No one at HCCS ever expressed concern to her about Plaintiff's absences. Exhibit 29, Pixley dep., p. 37.

147. Plaintiff wrote in her Journal Notes of several occasions when Mr. Lemmer seemed angry at her, *e.g.*, discussion in connection with Plaintiff's oral reminder over Plaintiff telling employees of impending layoffs in October 2008 (Defendant's Exhibit 20) and Plaintiff's Journal Notes about the discussion over Plaintiff leaving the building in a van driven by her son (Defendant's Exhibit 17, Plaintiff's Journal Notes, pp. 2-4 and Plaintiff's Journal Notes of meeting with Mr. Lemmer on April 1, 2008: "John's body language and facial features express outrage at [her] empowering [her]self;" Defendant's Exhibit 17, p. 1 and Plaintiff's Journal Notes about a September 23, 2008 CIS meeting at which "John's facial expression and body language clearly reflect his anger toward my speaking up." Defendant's Exhibit 17, Plaintiff's Journal Notes, p. 2.

148. Plaintiff nowhere writes of, or testifies that, Mr. Lemmer had any issue with her disability or FMLA leave or attendance. Defendant's Exhibit 17.

149. Plaintiff's Journal Notes of the September 25, 2008 meeting with Mr. Lemmer over Plaintiff's riding in an HCCS van with her son say, "I have been singled out by John for a reason that is <u>unknown</u> to me." Defendant's Exhibit 17, Plaintiff's Journal Notes, p. 4; emphasis added.

## ARGUMENT

Having conceded that her state law claims are time barred, Plaintiff's remaining claims are 1) that her layoff from her I.S. Department job as Senior Trainer was motivated by disability in violation of the Americans With Disabilities Act (ADA) and her Family Medical Leave Act (FMLA) leave and 2) the decision not place her in the Family Worker position resulted from her disability and/or complaint of disability discrimination and her FMLA leave.

### I. Plaintiff Cannot Show Her Layoff was Motivated By Her Disability or FMLA Leave

In her Counter-Statement of Issues Presented, Plaintiff asserts that she suffers from the "disabilities of obesity and a congenital foot disorder." Plaintiff's brief at p. 1. Obesity is not a recognized disability under the ADA unless it results from a "physiological condition." *E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006), rehearing and rehearing en banc denied, Feb. 27, 2007. Plaintiff has not proffered any evidence that her obesity resulted from a physiological disorder.

Plaintiff cites the wrong standard for evaluating her layoff claim. In reduction-in-force cases, the fourth prong of the *McDonnell Douglas* approach "is modified so that the plaintiff must provide additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547-548 (6th Cir. 1988), emphasis added. None of the cases Plaintiff cites for the proposition that temporal proximity can raise a *prima facie* case involved a reduction-in-force.



Troy_629974_1

Plaintiff offers no evidence that she was singled out for layoff because of her congenital foot condition. She simply labels her FMLA leave for removal of a bunion as both FMLA and ADA leave (Plaintiff's brief at p. 6), and points to a statement in her 2008 performance evaluation which stated her absences, not her disability, created an additional burden on the I.S. Staff. This statement shows Plaintiff was laid off after her performance evaluation that contained this note, not that she was laid off because of her disability or her FMLA leave. Plaintiff's rating for "meets attendance policy" on her 2008 performance evaluation was a "2," the same rating she received in this category in her 2007 evaluation. This does not show that Plaintiff was "singled out" for discharge because of her disability. Thus, Plaintiff cannot establish a *prima facie* case of discrimination. Even if she did, HCCS rebutted by showing that she was laid off, and that her position was determined to be the one HCCS could best survive without. Plaintiff cites the ways a plaintiff can show pretext, but offers no evidence that Plaintiff's layoff had no basis in fact, was not the real reason or that the reason was not sufficient. HCCS should be granted summary judgment.

Plaintiff cannot show that her FMLA leave was a motivating factor in her layoff. Again, Plaintiff cites only temporal proximity which in the absence of "other compelling evidence" is not sufficient. *Blume v. Potter*, 289 F.3d Appx. 99, 106, 2008 WL 3820590 (6th Cir. 2008). "This Circuit has made it clear that 'temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence,' quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). This is particularly the case where the defendant provides reasonable evidence of alternative causation." Citation omitted, emphasis added. Plaintiff cites no such evidence. HCCS here provided reasonable evidence that HCCS determined that Plaintiff's position was the one it could best do without.

Plaintiff's FMLA leave was from May 23 to August 4, 2008. She was notified of layoff on October 21, 2008. Plaintiff cites only temporal proximity and the indeterminate statement on her performance evaluation about her absences. This is not compelling evidence. This does not show a causal relationship between her FMLA leave and her layoff. As with her disability claim, Plaintiff offers no additional evidence of pretext. HCCS should be granted summary judgment.

## II. <u>Plaintiff Cannot Show Discrimination or Retaliation in the Decision Not to Place Her in the Family Worker Position</u>

Plaintiff's claim regarding the Family Worker position is subject to the *McDonnell Douglas* approach. Plaintiff cannot satisfy the *prima facie* case because she was not qualified for the position at the time HCCS decided to place in the position a better qualified, experienced employee whose position also was eliminated. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); *E.E.O.C. v. P.A.M. Transport, Inc.*, Civil Action No. 09-CV-13851, opinion and order dated September 7, 2011, p. 7, attached as Exhibit 30. Plaintiff cannot show that she was "otherwise qualified" because HCCS had not received a variance from the State on the education requirement, nor an exemption from HCCS's internal requirement for the Family Worker position. HCCS should be granted summary judgment on this claim.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the ADA." 42 U.S.C. § 12203(a). Retaliation claims are treated the same under the ADA as under Title VII, *i.e.*, the *McDonnell Douglas* approach. *Penny v. United Parcel Service*, 128 F.3408, 417 (6th Cir., 1997). To establish retaliation, Plaintiff must show she engaged in protected activity; she suffered an adverse action and a causal connection. *Id.*

Plaintiff cannot show she engaged in protected activity. She never told anyone that she believed her position was targeted for layoff based on disability or FMLA leave. At best, she told Ms. Parker and Ms. Pixley that she thought she was discriminated against. She testified she told them she felt it was based on Mr. Lemmer's negative attitude and/or that he didn't like her. Only four days before this meeting with Ms. Pixley and Ms. Parker, Plaintiff wrote in her Journal Notes, "I have been singled out by John for a reason that is unknown to me." Emphasis added. Vague charges of discrimination are not protected activity. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir., 1989); *Fox v. Eagle Distributing Co.*, 510 F3d 587; *Love v. Electric Power Board of Chattanooga, EPB*, 392 Fed. Appx. 40, 2010 WL 3278230 (6th Cir., 2010) (statement that "management is out to get" plaintiff was not protected). *See also Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. ___, 131 S.Ct. 1325, 1335 (2011), holding an oral wage and hour complaint under the Fair Labor Standards Act is sufficient if it gives the employer clear notice. "To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Plaintiff's telling Ms. Pixley and Ms. Parker that she felt discriminated against because Mr. Lemmer didn't like her or had a negative attitude is not notice of discrimination based on disability or FMLA leave. Thus, Plaintiff was not engaged in protected activity.

Even if it was protected activity, there was no causal connection. There is no evidence that Mr. Kruse or Mr. Geddes or Mr. Lemmer were ever made aware of Plaintiff's discussion with Ms. Pixley and Ms. Parker. The fact that the nonselection occurred after the meeting does not show that there was any connection. Even if there were, Plaintiff was not qualified for the Family Worker position when Mr. Geddes decided to place Ms. Lombrana in the position.

HCCS should be granted summary judgment on this claim.

## CONCLUSION

Plaintiff was one of 48 HCCS employees notified in Fall 2008 that their positions were being eliminated. Despite Mr. Kruse's efforts to obtain an exception for Plaintiff, HCCS had another, better qualified, experienced employee, whose position also was being eliminated, for the position that Plaintiff wanted. Plaintiff's layoff and non-selection for another position were not based on disability or FMLA leave. HCCS should be granted summary judgment.

BODMAN PLC

By: /s/ Karen L. Piper
Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
248-743-6025
Attorneys for Defendant

Dated: September 14, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Jeffrey S. Burg and James V. Bellanca, Jr.

BODMAN PLC

By: /s/ Karen L. Piper
Karen L. Piper (P31706)
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
248-743-6025
Attorneys for Defendant
kpiper@bodmanlaw.com